WERNER H. ERHARD AND ELLEN V. ERHARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Erhard v. Commissioner
Docket Nos. 39473-85, 46712-86, 39532-87, 137-88
United States Tax Court
T.C. Memo 1992-376; 1992 Tax Ct. Memo LEXIS 400; 64 T.C.M. (CCH) 10; July 6, 1992, Filed *400 An order denying in part and granting in part petitioners' motion for reconsideration will be issued and decisions will be entered under Rule 155. For Petitioners: Michael I. Saltzman, Barbara T. Kaplan, and Robert F. Hermann. For Respondent: Carmen Baerga, Craig Connell, Mildred Moon, and Raymond Kahn. SCOTT SCOTT SUPPLEMENTAL MEMORANDUM OPINION SCOTT, Judge: These cases are before us on petitioners' motion for reconsideration of the Memorandum Findings of Fact and Opinion filed in the above consolidated cases on July 1, 1991, T.C. Memo. 1991-290. The motion for reconsideration alleged that the Court erred in concluding in its Memorandum Findings of Fact and Opinion (1) that petitioners were not entitled to interest expense deductions in 1981, 1982, and 1983 with respect to certain purported loans which the Court held not to be bona fide loans, but rather sham transactions, (2) that the Court erred in holding that petitioners had not established a basis for depreciation of assets transferred to them in 1981 for the years 1981, 1982, and 1983, and (3) in concluding that petitioners were liable for the addition to tax under section 6661[1] and increased interest *401 under section 6621(c) in 1982 and 1983. A hearing was held on October 30, 1991, on petitioners' motion and thereafter the parties filed briefs. Oral argument was held before Judge Scott with Special Trial Judge Gussis present in the courtroom. Judge Gussis joins in the conclusions in this opinion. Upon consideration of the arguments made by the parties orally and on brief, we conclude that for the reasons expressed in our Memorandum Findings of Fact and Opinion filed July 1, 1991, the purported loans of $ 14 million and $ 1 million discussed in that opinion were not in fact bona fide loans but were sham transactions, the result primarily of money movements. Therefore, based on the Memorandum Findings of Fact and Opinion filed on July 1, 1991, we deny petitioners' motion for reconsideration with respect to our conclusion *402 that interest deductions are not allowable with respect to the purported $ 14 million and $ 1 million loans since these purported loans were not bona fide indebtedness of petitioners. We also deny petitioners' motion for reconsideration of our holding that the purported purchases by petitioners of assets of est, An Educational Corporation (est, a.e.c.), with purported proceeds of such loans were sham transactions. We also deny petitioners' motion for reconsideration of our holding that petitioners are liable for increased interest under section 6621(c) because we reaffirm our conclusion that the transactions giving rise to the deficiencies in these cases were sham transactions and thus tax motivated within the meaning of section 6621(c)(3). In our opinion we recognized and found that certain physical assets of a depreciable nature were transferred from est, a.e.c. to petitioners' sole proprietorship, Werner Erhard Associates (WEA), but held that the purported purchases were shams and the purported purchase price did not establish any basis of petitioners in the various assets. After reciting the facts with respect to the transfer of assets from est, a.e.c. to WEA, we concluded *403 that in our view est, a.e.c. was in effect terminated as originally contemplated in 1975, that a financial accounting was rendered for Werner Erhard from the Margolis firm covering some 10 years of Erhard's involvement with the Margolis system and its entities, and that the est, a.e.c. assets were transferred to WEA in an artificial series of transactions that were designed to produce depreciation expense deductions in 1981, 1982, and 1983 in the amounts of $ 884,024, $ 1,471,211, and $ 1,332,998, respectively. We stated that the circular money movements used with respect to the purported loans were shams designed merely to create tax deductions. On this basis we concluded that on the record before us petitioners were not entitled to the depreciation expense deductions claimed under section 167(a), stating: "In short, there is nothing in this record that would permit a finding of any basis for any of the assets in the hands of WEA." Effectively we recognized that assets which had been in the stated possession of est, a.e.c. and on which depreciation had been claimed on the returns of est, a.e.c. had come into the hands of WEA. It is apparent from the nature of the assets that *404 at least some of these assets were depreciable, and if the record were adequate to establish the basis, if any, of these assets in the hands of WEA and the remaining useful life of these assets at the time of transfer, WEA would be entitled to some depreciation deduction with respect to some of the assets transferred to WEA. Our attempt to review the record to ascertain what basis, if any, the record supports for these assets in the hands of WEA has not been assisted by petitioners' continuous argument that the sham transactions purportedly purchasing these assets should be recognized and that the values assigned to the assets by petitioners in the returns for 1981, 1982, and 1983 be accepted. However, petitioners did call our attention to, and we find in the record, petitioners' Exhibit 177-6, a schedule of depreciation claimed by est, a.e.c. for its year ending June 30, 1981, which shows the following as it appears in Exhibit 177-6: est, An Educational Corporation Federal Corporation Statements - Year Ending 06/30/81 Depreciation As Computed Under Federal Statutes Statement 7 - Amortization Non Recovery Property
Cost
Useful
Current
Date
Or Other
Accumulated
Life
Amorti
Description
Acquired
Basis
Amortization
Method
Yrs Pct
zation
License
09/01/75
10,000,000 4,833,332 SL
10
916,653   Graduate
List
09/01/75
631,760 305,355 SL
10
57,925   Graduate
List Sold
06/01/81
-531,470 -248,166 SL
0   Registration
List Written
Off
06/01/81
-118,290 -57,189 SL
0   Totals
10,000,000*
4,833,332*
974,578*  Total Depreciation
974,578** *405 Depreciation As Computed Under Federal Statutes Statement 8 - Depreciation Non Recovery Property Cost
Accumulated
Useful
Date
Or Other
Amorti-
Life
Current
Description
Acquired
Basis
zation
Method
Yrs Pct
Amortization
Building & Addition
02/01/77
501,088 17,054 SL
.VAR
5,767    Leasehold Improvements
VAR
934,442 498,668 SL
.VAR
104,150    Office Furniture
VAR
853,323 328,403 SL
.VAR
117,324    Office Equipment
VAR
369,407 160,402 SL
.VAR
53,339    Audio Visual Equipment
VAR
405,503 241,058 SL
.VAR
68,423    Other Equipment
VAR
650,962 117,730 SL
.VAR
88,553    Vehicles
VAR
124,008 60,274 SL
.VAR
31,369    Software
VAR
179,390 38,555 SL
.VAR
55,522    Hardware
VAR
358,489 67,281 SL
.VAR
73,586    Leasehold Improvements-Sold or Aband
VAR
-934,442 -498,668 0    Other Equipment-Sold or Abandoned
VAR
-123,670 -12,634 0    Vehicles-Sold
VAR
-124,008 -60,274 0    Totals
3,194,492*
957,849*
598,033*   Total Depreciation
598,033**
We also find that the record contains as petitioners' Exhibit 659 the docket entries *406 of respondent's motion to dismiss for failure to properly prosecute to which is attached a copy of the notice of deficiency and the order of dismissal in the case of est, An Educational Corporation, docket No. 3014-85. The deficiency notice with respect to the depreciation schedule for the fiscal year of est, a.e.c. ended June 30, 1981, which is the year involved in docket No. 3014-85, shows adjustments disallowing a claimed interest deduction, disallowing amortization of $ 974,578, and determining other income by disallowing a claimed Hopi partnership loss of $ 773,762, and "wardrobe" of $ 3,111. The only other adjustment in this notice was an increase in the claimed deduction for contributions of $ 3,628. The deficiency notice with respect to the disallowance of the amortization expense states: The amount of $ 974,578 claimed as amortization expense is disallowed because it has not been established that: (1) You are the equitable or beneficial owner of the property; and (2) The basis claimed for the property should be recognized as bona fide for tax purposes; and (3) The amount claimed represents a reasonable allowance for amortization expense. Amortization of license granted
by Welbehagen B.V.
$ 916,653
Amortization graduate list
57,925
Total disallowed
$ 974,578
*407 In the notice of deficiency the claimed depreciation for the fiscal year of est, a.e.c. ended June 30, 1981, of $ 598,033 was not disallowed and was not at issue in the case before this Court. It is clear from our findings in our Memorandum Findings of Fact and Opinion filed July 1, 1991, that leasehold improvements, office furniture, office equipment, audiovisual equipment, other equipment, vehicles, and computer hardware and software were transferred by est, a.e.c. to WEA around July 1, 1981. The record shows that the "Franklin Building" was transferred by est, a.e.c. to WEA around the end of July 1981. It is not clear from the record whether the building and addition listed on the depreciation schedule of est, a.e.c. on its return for its fiscal year ended June 30, 1981, was the Franklin Building which in our Memorandum Findings of Fact and Opinion filed July 1, 1991, we found was transferred to WEA at the end of July 1981. Petitioners, in an exhibit attached to their brief with respect to their motion for reconsideration, submitted a computation with respect to items transferred by est, a.e.c. to WEA, going back and making adjustments based on returns of est, a.e.c. for *408 the year 1975 forward. However it appears to us that the remaining basis that est, a.e.c. had in the building and addition, leasehold improvements, office furniture, and the other items listed on the schedule attached to est, a.e.c.'s return for its fiscal year ending June 30, 1981, should properly be determined by subtracting from the cost or other basis of these assets in the hands of est, a.e.c. the amount of accumulated depreciation and current depreciation shown on the schedule. We do notice that on this same schedule the leasehold improvements of $ 934,442 are shown as sold or abandoned as are the items of $ 123,670 of other equipment and $ 124,008 of vehicles sold. Apparently this statement was intended to in some way be connected with the transfer by est, a.e.c. of certain items to WEA. However, it appears to us that if the schedule of depreciation of est, a.e.c. is accepted as evidence of the remaining basis of est, a.e.c. in the various assets at the time they were transferred to WEA, that the schedule of transferred or abandoned assets has no relevance. Having found some evidence of the basis of est, a.e.c. in a number of the assets transferred to WEA shortly before *409 the transfer, we need to discuss: (1) What evidence is available to show that this basis should carry over to WEA, (2) what the useful life of these assets was at the time they were transferred to WEA, and (3) whether there is anything in the record to justify WEA's using for depreciation purposes the remaining basis of the assets in the hands of est, a.e.c. at the time they were transferred to WEA. Obviously, in view of the dismissal of the case of est, a.e.c. for its fiscal year June 30, 1981, the portion of the statement dealing with amortization of license and graduate lists sold has no semblance of reliability. However, the leasehold improvements and other items shown on the depreciation schedule appear to be probative evidence of the basis of those items to est, a.e.c. Petitioners in their income tax return for the calendar year 1981, which is joint Exhibit 1-A in these cases, on Schedule C assigned various useful lives to various pieces of property used in the business of WEA. Also Schedule C of petitioners' returns for 1982 and 1983 show this same information. The items shown on Schedule C of petitioners' returns as capitalized leases are not assets which are shown on *410 the returns of est, a.e.c. for its fiscal year ended June 30, 1981. Therefore WEA would have no depreciable basis in "capitalized leases" based on any carryover basis from est, a.e.c. The graduate lists have not been shown to have a basis to est, a.e.c. or WEA and except for "Building and addition" listed by est, a.e.c. with a cost or other basis of $ 501,088, no basis for building improvements is shown. It appears that the leasehold improvements with a basis of $ 331,624 ($ 934,442 less the $ 498,668 of accumulated depreciation and the $ 104,150 of current depreciation) may be allocated useful lives as shown on Schedule C of petitioners' 1981 return and on this basis depreciation computed for WEA on those assets. The remaining basis of est, a.e.c. in office furniture, audiovisual equipment, other equipment, vehicles, and computer software and hardware may be allocated useful lives in the same manner in order to compute depreciation for each year here in issue and that a similar computation may be made for the "Building and addition" as shown on the return of est, a.e.c. for its fiscal year ended June 30, 1981. Respondent argues that if we permit petitioners to use the unused *411 basis of est, a.e.c., it is necessary to determine the gain or loss to petitioners from a distribution to them of the est, a.e.c. assets. Under certain circumstances respondent might be correct in this contention. However, here the weight of the evidence seems to be that although returns were filed by est, a.e.c. and its ownership was stated to be in Werner Erhard Charitable Settlement, on the accounting system used by Margolis est, a.e.c., the Werner Erhard Charitable Settlement, and the Erhard's personal accounts were kept as one and intermixed. Effectively the result of this method of bookkeeping was that, regardless of the technical ownership of est, a.e.c. and regardless of the recognition of this ownership in several cases before this Court (see Erhard Seminars Training v. Commissioner, T.C. Memo. 1986-526, in which we held that claimed amortization deductions were sham transactions and certain claimed expense deductions were disallowed because they were personal expenses of Werner Erhard and his family and est, An Educational Corporation v. Commissioner, T.C. Memo. 1986-527, in which we held that a purported indebtedness incurred by *412 the taxpayer in acquiring a 10-year license was a sham transaction and the taxpayer was held not to be entitled to amortization expenses or claimed interest expense deductions) on the Margolis books the two corporations and the Erhards were treated as one. We referred to the cases of est, a.e.c. for the years 1981 and 1982 in our Memorandum Findings of Fact and Opinion in these cases filed July 1, 1991. In those cases deficiencies as determined by respondent were sustained when the cases were dismissed for lack of prosecution. One of these cases involved the fiscal year ending June 30, 1981, of est, a.e.c. and the other the fiscal year of est, a.e.c. ending June 30, 1982. While none of these cases actually held that Werner Erhard and the corporations were in substance one and the same, in all of them the transactions under consideration were considered shams. By determining that the basis of the assets WEA obtained from est, a.e.c. is the remaining basis at June 30, 1981, of est, a.e.c. in those assets, we are not determining whether in fact est, a.e.c. was separate and distinct from Werner Erhard and what the ownership of est, a.e.c. was. We have merely concluded that most *413 of the transactions involving the financial affairs of est, a.e.c., as was the purported purchase in these cases, were sham transactions and for that reason have concluded for the purposes of a basis of WEA in the physical assets which were transferred from est, a.e.c. to WEA, the sole proprietorship of Werner Erhard, the unrecovered basis of est, a.e.c. at the time the assets were transferred to WEA is the basis of WEA in those assets. Our conclusion is that WEA should be entitled to recover through depreciation the unrecovered basis in the depreciable assets of est, a.e.c. transferred to WEA to the extent that, on this record, those assets can clearly be traced as going from est, a.e.c. to WEA and used by WEA in its business of conducting seminars. Upon reconsideration we modify our Memorandum Findings of Fact and Opinion filed July 1, 1991, by allowing depreciation deductions to WEA on the basis outlined herein. We are aware of the fact that the parties in these cases stipulated that est, a.e.c. was a separate entity from petitioners and WEA. We have considered this stipulation in reaching our conclusion of the basis of WEA in the assets it received from est, a.e.c. and concluded *414 that considering the unusual facts in this record, WEA did have the basis for depreciation in the assets received from est, a.e.c. which we have found. The final argument made by petitioner is that under a holding of the Ninth Circuit Court of Appeals we incorrectly determined that petitioners were subject to the addition to tax under section 6661(a) for the years 1982 and 1983. In the case of Vorsheck v. Commissioner, 933 F.2d 757 (9th Cir. 1991), affg. in part and revg. in part an Oral Opinion of this Court, the Ninth Circuit held that the taxpayer was not liable for the addition to tax under section 6661(a). In Vorsheck v. Commissioner, supra, we held that the taxpayers were not liable for the additions to tax under section 6653(a) since they had relied on the advice of an accountant in claiming deductions with respect to an investment in a limited partnership. We held the limited partnership to be a tax shelter without a profit objective. We held that the partnership did not engage in a trade or business, but was merely organized to offer investors a tax shelter. However, since the taxpayers in the Vorsheck case had entered *415 into the transaction on the advice of an accountant in good faith with the objective on their part to make a profit, we concluded that they were not subject to the addition to tax under section 6653(a). We held however that since there was a substantial understatement of income tax, the taxpayers in Vorsheck were subject to the addition to tax under section 6661. The Ninth Circuit pointed out that section 6661(c) provides that the Secretary may waive the "penalty" provided for in section 6661(a) on a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. The court then stated: Thus, if it was reasonable for the taxpayer to rely upon the advice of an accountant under the circumstances, and the taxpayer did so in good faith, then the Commissioner may waive the penalty. Here, the tax court found that, although the fact that WROG was a tax shelter would have been apparent to an "experienced businessman," the Vorshecks were not sophisticated business persons. "They relied upon the advice of their trusted tax adviser who assured them that they would obtain certain deductions." On the basis of its evaluation *416 of the motives and experience of the Vorshecks, the tax court denied the penalties under sections 6653 and 6659. The tax court, however, found that the Vorshecks were liable for the penalty under section 6661. We do not agree. If the Vorshecks were acting as "an ordinary prudent person in the circumstances," then their reliance upon the investment advice of their accountant was "reasonable" and "in good faith under all the circumstances." See Treas. Reg. § 1-6661.6(b); Heasley, 902 F.2d at 385. Thus, the Vorshecks meet the standard for waiver of the penalty under section 6661. Accordingly, we reverse the tax court's decision upholding the Commissioner's assessment of a 10% penalty under section 6661. [Vorsheck v. Commissioner, supra at 759; fn. ref. omitted; citation omitted.] In the instant case we found that petitioners' reliance on the advice of lawyers and accountants in following the plan of taking over the assets of est, a.e.c. was reasonable and in good faith. However, for reasons we explained in the opinion, we did not consider that these same facts required a conclusion that the taxpayers were not liable for the addition *417 to tax under section 6661. However, we see no distinction in the instant case and the case of Vorsheck v. Commissioner, supra.Since an appeal in the instant case lies to the Ninth Circuit, we reconsider our opinion with respect to the section 6661 addition to tax, and based purely on the holding of the Ninth Circuit in the case of Vorsheck v. Commissioner, supra, conclude that because petitioners' reliance on their lawyers and accountants with respect to the transactions here involved was reasonable and in good faith, petitioners met the standard for waiver of the addition to tax under section 6661. Accordingly, we hold that petitioners are not liable for the addition to tax under section 6661. Except in the two respects outlined above we reaffirm our holding in all respects as set forth in our Memorandum Findings of Fact and Opinion filed July 1, 1991. An order denying in part and granting in part petitioners' motion for reconsideration will be issued and decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩